NICOLAS A. JAMPOL (State Bar No. 244867)
  nicolasjampol@dwt.com
CYDNEY SWOFFORD FREEMAN (State Bar No. 315766)
  cydneyfreeman@dwt.com
SAMANTHA W. LACHMAN (State Bar No. 331969)
  samlachman@dwt.com
DAVIS WRIGHT TREMAINE LLP
865 South Figueroa Street, 24th Floor
Los Angeles, California 90017-2566
Telephone:  (213) 633-6800
Fax:  (213) 633-6899

Attorneys for Defendants
NATHANIEL PARKER; TINY GIANT
PRODUCTIONS, LLC; ASP FILM, LLC;
TM FILM FINANCE, LLC; and VERTICAL
ENTERTAINMENT, LLC

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| AVAN HARDWELL,<br><br>                Plaintiff,<br><br>        v.<br><br>NATHANIEL PARKER, an individual, TV FILM FINANCE, LLC d/b/a/ TM FILMS, a California limited liability company; TINY GIANT PRODUCTIONS, LLC *d/b/a* TINY GIANT ENTERTAINMENT, a California limited liability company; VERTICAL ENTERTAINMENT, LLC, a California limited liability company, ASP FILM, LLC, a California limited liability company; and DOES 1-10, inclusive,<br><br>                Defendant. | Case No. 2:21-cv-9100-DMG-PVC<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S COMPLAINT**<br><br>Date:      March 4, 2022<br>Time:      9:30 a.m.<br>Crtrm:    8C |

**TO PLAINTIFF AND HIS ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on March 4, 2022, at 9:30 a.m. or as soon as may be heard in Courtroom 8C of the United States District Court for the Central District of California, First Street Courthouse, 350 West First Street, Los Angeles, California 90012, defendants Nathaniel Parker, Tiny Giant Productions, LLC, ASP Film, LLC, TM Film Finance, LLC,[1] and Vertical Entertainment, LLC (collectively, "Defendants") will and hereby do move this Court for an order dismissing the complaint filed by plaintiff Avan Hardwell ("Plaintiff").

This motion is made pursuant to Federal Rule of Civil Procedure 12(b)(6) on the grounds that the complaint fails to state a claim. Plaintiff's first cause of action for copyright infringement as to Defendants' film *American Skin* (the "Film") fails because the complaint fails to allege substantial similarity of protected expression between the Film and Plaintiff's purported screenplay titled *First and Constitution*. Because Plaintiff's claim for direct copyright infringement fails, so too does his second cause of action for copyright infringement as to defendant Vertical Entertainment, LLC's distribution of the Film.

This motion is based on this notice of motion, the memorandum of points and authorities, the declaration of Cydney Swofford Freeman, the notice of lodging with exhibit, and all other matters of which this Court may take judicial notice, the pleadings, files, and records in this action, and on any argument heard by this Court.

This motion is made following the conference of counsel pursuant to L.R. 7-3, which took place on January 21, 2022.

---

[1] Erroneously named "TV FILM FINANCE, LLC *d/b/a* TM FILMS" in the complaint's caption and "TM Film Finance LLC d/b/a TM Films" in the complaint. *See* Compl. ¶ 3.

DEFENDANTS' MOTION TO DISMISS
4860-0766-6186v.2 0118814-000002

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

1   DATED: January 28, 2022

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

DAVIS WRIGHT TREMAINE LLP
NICOLAS A. JAMPOL
CYDNEY SWOFFORD FREEMAN
SAMANTHA W. LACHMAN

By:   /s/ Nicolas A. Jampol
              Nicolas A. Jampol

Attorneys for Defendants

---

DEFENDANTS' MOTION TO DISMISS
4860-0766-6186v.2 0118814-000002

2

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ................................................................. 1

II.    FACTUAL BACKGROUND .................................................. 2

       A.    First and Constitution ............................................... 2

       B.    American Skin ........................................................... 2

       C.    This Lawsuit .............................................................. 4

III.   PLAINTIFF FAILS TO PLEAD A PLAUSIBLE COPYRIGHT
       CLAIM ................................................................................. 4

       A.    The Court Must Disregard Unprotectable Elements ........................... 6

       B.    The Complaint Does Not Sufficiently Allege Substantial
             Similarity of Protected Expression ........................... 8

             1.    Plot and Sequence of Events .................................. 10

             2.    Theme ........................................................... 13

             3.    Characters ...................................................... 14

             4.    Setting .......................................................... 17

             5.    Dialogue ......................................................... 18

             6.    Mood and Pace .................................................. 20

IV.    PLAINTIFF'S SECOND CAUSE OF ACTION LIKEWISE FAILS ........ 20

V.     CONCLUSION ...................................................................... 20

DEFENDANTS' MOTION TO DISMISS COMPLAINT
4860-0766-6186v.2 0118814-000002

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

<u>**TABLE OF AUTHORITIES**</u>

<u>**Page**</u>

**Cases**

*Abdin v. CBS Broad.*,
   971 F.3d 57 (2d Cir. 2020)......................................................................7

*Apple v. Microsoft*,
   35 F.3d 1435 (9th Cir. 1994) .................................................................6

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)...............................................................................4

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007).............................................................................4, 5

*Benay v. Warner Brothers Entertainment*,
   607 F.3d 620 (9th Cir. 2010) ....................................................6, 11, 17

*Bernal v. Paradigm Talent & Literary Agency*,
   788 F. Supp. 2d 1043 (C.D. Cal. 2010) ................................................9

*Cavalier v. Random House, Inc.*,
   297 F.3d 815 (9th Cir. 2002) .................................................................6

*Corbello v. Valli*,
   974 F.3d 965 (9th Cir. 2020) ...........................................................7, 10

*Esplanade Prods. v. Walt Disney Co.*,
   2017 WL 5635024 (C.D. Cal. July 11, 2017)......................5, 9, 10, 20

*Evans v. NBCUniversal Media*,
   2021 WL 4513624 (C.D. Cal. July 23, 2021)........................................9

*Feist Publ'ns v. Rural Tel. Serv.*,
   499 U.S. 340 (1991)...............................................................................7

*Fillmore v. Blumhouse Prods.*,
   2017 WL 4708018 (C.D. Cal. July 7, 2017)..........................................8

*Fox Broad. Co. v. Dish Network*,
   747 F.3d 1060 (9th Cir. 2014) .............................................................20

ii

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

*Gallagher v. Lions Gate Entm't*,
  2015 WL 12481504 (C.D. Cal. Sept. 11, 2015) .................................................. 18

*Gilbert v. New Line Productions*,
  2010 WL 5790628 (C.D. Cal. Aug. 13, 2010) .................................................. 8

*Knievel v. ESPN*,
  393 F.3d 1068 (9th Cir. 2005) ............................................................. 3

*Kouf v. Walt Disney Pictures & Television*,
  16 F.3d 1042 (9th Cir. 1994) ........................................................ 9, 20

*Litchfield v. Spielberg*,
  736 F.2d 1352 (9th Cir. 1984) ............................................................. 9

*Masterson v. Walt Disney Co.*,
  2019 WL 1581400 (C.D. Cal. Jan. 29, 2019) ...................................... 9

*Miller v. Universal City Studios, Inc.*,
  650 F.2d 1365 (2d Cir. 1981) ............................................................. 7

*Nobile v. Watts*,
  747 F. App'x 879 (2d Cir. 2018) ..................................................... 7, 11

*Olson v. Nat'l Broad. Co.*,
  855 F.2d 1446 (9th Cir. 1988) ........................................................ 18

*Segal v. Rogue Pictures*,
  544 F. App'x 769 (9th Cir. 2013) ...................................................... 6

*Shame on You Prods. v. Banks*,
  120 F. Supp. 3d 1123 (C.D. Cal. 2015) .............................................. 6

*Sheldon Abend Revocable Tr. v. Spielberg*,
  748 F. Supp. 2d 200 (S.D.N.Y. 2010) .............................................. 7, 11

*Silas v. Home Box Office*,
  201 F. Supp. 3d 1158 (C.D. Cal. 2016) ........................................ 13, 18

*Tanksley v. Daniels*,
  902 F.3d 165 (3d Cir. 2018) ........................................................... 15

*Three Boys Music Corp. v. Bolton*,
  212 F.3d 477 (9th Cir. 2000) ........................................................... 5

DEFENDANTS' MOTION TO DISMISS COMPLAINT
4860-0766-6186v.2 0118814-000002

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

*Washington v. ViacomCBS*,
 2020 WL 5823568 (C.D. Cal. Aug. 20, 2020)..................................................8

*Whitehead v. Paramount Pictures*,
 53 F. Supp. 2d 38 (D.D.C. 1999) .....................................................14, 15, 16

*Wild v. NBC Universal*,
 788 F. Supp. 2d 1083 (C.D. Cal. 2011) ...........................................................5

*Zella v. EW Scripps Co.*,
 529 F. Supp. 2d 1124 (2007) ...........................................................................6

**Rules**

Federal Rules of Civil Procedure
 Rule 12(b)(6)....................................................................................................4

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.      INTRODUCTION

Defendants Nathaniel Parker, Tiny Giant Productions, LLC, ASP Film, LLC, TM Film Finance, LLC, and Vertical Entertainment, LLC ("Defendants") wrote, produced, and distributed the film *American Skin* (the "Film"), which Plaintiff Avan Hardwell claims infringes his purported screenplay titled *First and Constitution* (the "Screenplay") because both works supposedly share a premise pulled straight from the headlines along with other alleged similarities that flow from that premise or are otherwise generic elements in film and television.

Rather than attaching the Screenplay to the complaint, or even describing the Screenplay's plot, sequence of events, and other elements in detail, Plaintiff instead decided to strategically withhold his Screenplay and asks this Court to allow his claims to proceed based on vague, seemingly incomplete, and sometimes contradictory characterizations of the Screenplay.  While Plaintiff is not required to attach the allegedly infringed work to the complaint, he *is* required to plead allegations sufficient to state a valid claim of copyright infringement.  His allegations, however, reflect unprotectable similarities between the Screenplay and the Film that fall far short of showing that the works' protected expression is substantially similar.  Importantly, these alleged similarities presumably represent the elements from the Screenplay that are the most like the Film, characterized (or possibly mischaracterized) in the most beneficial way to Plaintiff, and without any discussion of dissimilarities or distinctions between the works.

Copyright law does not protect ideas, facts, common or generic elements, or concepts flowing naturally from other unprotectable elements.  The alleged similarities described in the complaint fall within these unprotectable categories and even without looking at the Screenplay itself—which Plaintiff should proffer so the Court can assess the works themselves, as courts in this Circuit routinely do—

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Plaintiff's claims fail to state a claim as a matter of law.  Defendants respectfully request that the Court dismiss Plaintiff's complaint in its entirety.

## II.    FACTUAL BACKGROUND

### A.    First and Constitution

Plaintiff Avan Hardwell alleges that he wrote the *First and Constitution* screenplay in or about 2016.  Compl. ¶ 11.  Plaintiff alleges that in the Screenplay, a Houston police officer kills an African American teenager named Orion after wrongly fearing that Orion is reaching for a gun.  *Id*. ¶¶ 12, 17.  The police officer who shot Orion does not face charges.  *Id*. ¶ 13.  Orion's father, Makai Speakes, is a formerly incarcerated gang member who now works as a limo driver.  *Id*. p. 7.  He takes the uncharged officer hostage at City Hall and "air[s]" the hostage negotiations on social media.  *Id*. ¶ 13.[1]  (The complaint is unclear on whether any other people are taken hostage, and if so, how many or who.)  During the lengthy negotiations, Makai agrees to free the officer if he admits to profiling and wrongly killing Orion.  *Id*. ¶ 14 & p. 7.  After the officer admits guilt and is released, police breach the building and kill Makai.  *Id*.  Plaintiff did not attach the Screenplay to the complaint, nor did he provide the Screenplay to Defendants' counsel.

### B.    American Skin

Defendants wrote, directed, produced, and distributed the film *American Skin*.  Compl. ¶¶ 2-6.  The Film is presented largely as the final project of a group of film students' graduate documentary thesis.  As revealed by officer bodycam footage, a former marine turned high school janitor, Lincoln, and his 14-year-old son, Kajani, are stopped by police while driving through an affluent neighborhood in Los Angeles, allegedly for speeding.  *See* Declaration of Cydney Swofford

---

[1] Plaintiff alleges that his screenplay includes a "show trial," Compl. ¶ 13, but his more detailed description indicates that the show trial is actually a "lengthy hostage negotiation."  *See* Compl. p. 7.  It is unclear which of these characterizations is accurate.

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Freeman Exhibit 1 ("Ex. 1") at 1:03.[2]  Kajani, who studied constitutional rights at his private school (where his father is the janitor), insists on filming the interaction despite his father's pleas for him to put down his phone.  *Id.* at 2:05.  Police escalate the situation and an officer named Randall ultimately shoots and kills unarmed Kajani.  *Id.* at 2:35.

A year later, around the time a grand jury is about to decide whether to indict Officer Randall, a student documentary team approaches Lincoln with an idea to document the decision.  *Id.* at 2:55.  Lincoln reluctantly allows the film crew access to his family, and the documentarians capture the family's dismay as the grand jury fails to indict Officer Randall.  *Id.* at 20:00.  The film crew follows the subsequent uprising throughout the city, and police ask Kajani's mother to film a statement asking protestors to abandon the violence.  *Id.* at 24:20.

Shortly after, Lincoln asks the documentary crew to give him a ride.  Unbeknownst to the students, they are forced to assist Lincoln in kidnapping the police captain.  *Id.* at 26:30.  Lincoln and a crew of several other military veterans take the police captain to the police precinct and lock down the premises, taking everyone inside hostage.  *Id.* at 29:00.  Seeking justice where the system failed, Lincoln stages a trial charging Officer Randall with Kajani's murder, setting himself as the prosecutor, one of the police officers held hostage as Officer Randall's defense counsel, and civilians, inmates, and administrative officers as the jury.  *Id.* at 39:50.  Lincoln forces the student documentarians to film and ultimately participate in the trial.  *Id.* at 35:35.

After extended discussions between the civilians, inmates, officers, and veterans about racism, the police's role in a community, patriotism, classism, and

---

[2] The Film is incorporated by reference throughout the complaint.  *See Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005).  Concurrent with filing this motion, Defendants are lodging a DVD copy of the Film with the Court and serving a copy on Plaintiff's counsel.  *See* Freeman Decl. ¶ 2; Notice of Lodging.

DEFENDANTS' MOTION TO DISMISS COMPLAINT
4860-0766-6186v.2 0118814-000002

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

education, the jury ultimately finds Officer Randall guilty of murder after he admits Lincoln was not speeding and that he racially profiled Lincoln. *See id.* at 48:10, 51:35, 52:43, 54:30, 57:10, 1:11:53, 1:14:34. Lincoln raises his gun to Officer Randall's head to carry out a sentence of death, but not before allowing Officer Randall to call his wife and son, to whom he apologizes and admits that he made a mistake. *Id.* at 1:15:20. Lincoln pulls the trigger, but has emptied the gun—revealing he had no intention of killing Officer Randall, and instead only wanted recognition that his son's death was unjust. *Id.* at 1:17:20.

Lincoln and the veterans ultimately release the hostages, and Officer Randall asks Lincoln to leave the building by his side, "not as an enemy." *Id.* at 1:21:31. Despite Officer Randall yelling that Lincoln is unarmed as they exit the building, a sniper shoots Lincoln in the head, and police step over his lifeless body without even a pause as they sweep the building. *Id.* at 1:22:39. The student documentary concludes with (fictional) media clips explaining away the takeover by claiming that Lincoln was mentally unstable and connected to Islamic extremists, and quickly pivoting to an upbeat discussion of sports. *Id.* at 1:23:25.

## C. This Lawsuit

On November 19, 2021, Plaintiff filed his complaint for copyright infringement. Compl. ¶¶ 28-38. Defendants now move to dismiss the complaint in its entirety.

## III. PLAINTIFF FAILS TO PLEAD A PLAUSIBLE COPYRIGHT CLAIM

Under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully," and is met only when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The complaint must contain sufficient concrete facts to

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

1   elevate a plaintiff's right to relief from merely "speculative" to "plausible."

2   *Twombly*, 550 U.S. at 555, 570.

3         To avoid dismissal on his cause of action alleging that the Film infringes his

4   purported copyright in the Screenplay, Plaintiff must show that the works at issue

5   are substantially similar in their protected expression. *Three Boys Music Corp. v.*

6   *Bolton*, 212 F.3d 477, 481 (9th Cir. 2000).[3]   Courts can and often do assess

7   substantial similarity at the pleadings stage by directly comparing both works at

8   issue, rather than the plaintiff's characterization of the works. *See, e.g.*, *Wild v.*

9   *NBC Universal*, 788 F. Supp. 2d 1083, 1097 (C.D. Cal. 2011) (comparing works at

10  issue and granting motion to dismiss copyright claim for lack of substantial

11  similarity), aff'd, 513 F. App'x 640 (9th Cir. 2013).  Because Plaintiff did not attach

12  the Screenplay to his complaint and has not provided a copy of the Screenplay to

13  Defendants' counsel or to the Court at this time, Defendants and the Court are

14  unable to directly compare the Screenplay itself to the Film.

15        Instead, Plaintiff's complaint must stand on its own to provide sufficiently

16  specific allegations that the works are substantially similar in protected expression.

17  "[I]t is the plaintiff's obligation to allege sufficient facts, if proved true, to permit a

18  jury to rule in the plaintiff's favor." *Esplanade Prods. v. Walt Disney Co.*, 2017

19  WL 5635024, at *1 (C.D. Cal. July 11, 2017) (dismissing plaintiff's copyright

20  claims because plaintiff neither attached its allegedly infringed works to the

21  complaint nor "describe[d] them in sufficient detail to permit" an analysis of

22  substantial similarity).  Here, even Plaintiff's carefully crafted characterizations fall

23  short of alleging actionable substantial similarity between the works at issue.

24

25

26

_____

27        [3] Plaintiffs in copyright actions must also establish that the defendants had
28  access to the allegedly infringing work. *Three Boys Music Corp.*, 212 F.3d at 481.
    Solely for purposes of this motion, Defendants do not challenge access.

DEFENDANTS' MOTION TO DISMISS COMPLAINT
4860-0766-6186v.2 0118814-000002

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

## A.    The Court Must Disregard Unprotectable Elements

To assess substantial similarity on a motion to dismiss, the Ninth Circuit uses the "extrinsic test," which focuses on the works' objective "articulable similarities." *Zella v. EW Scripps Co.*, 529 F. Supp. 2d 1124, 1133 (2007).  "[N]o amount of proof of access will suffice to show copying" if the works are not substantially similar in their protected expression. *Segal v. Rogue Pictures*, 544 F. App'x 769, 770 (9th Cir. 2013).  In assessing similarity, "a court must filter out and disregard the non-protectible elements." *Cavalier v. Random House, Inc.*, 297 F.3d 815, 822 (9th Cir. 2002).  Indeed, courts "may place *no* reliance upon any similarity in expression resulting from unprotectable elements." *Apple v. Microsoft*, 35 F.3d 1435, 1446 (9th Cir. 1994) (emphasis in original).  This is because "similarities derived from the use of common ideas cannot be protected; otherwise, the first to come up with an idea will corner the market." *Id.* at 1443.

Accordingly, courts filter out so-called *scenes a faire*, or elements that flow naturally from a basic premise. *Cavalier*, 297 F.3d at 823.  For example, in *Benay v. Warner Brothers Entertainment*, the plaintiffs pointed to a litany of purported similarities between their work and the movie *The Last Samurai*:

> Both have identical titles; both share the historically unfounded premise of an American war veteran going to Japan to help the Imperial Army by training it in the methods of modern Western warfare for its fight against a samurai uprising; both have protagonists who are authors of non-fiction studies on war and who have flashbacks to battles in America; both include meetings with the Emperor and numerous battle scenes; both are reverential toward Japanese culture; [] both feature the leader of the samurai rebellion as am important foil to the protagonist[; and] in both works the American protagonist is spiritually transformed by his experience in Japan.

607 F.3d 620, 625 (9th Cir. 2010).  In rejecting the plaintiffs' claims, the Ninth Circuit disregarded those similarities as flowing from the works' shared "basic plot premise" of "an American war veteran [who] travels to Japan in the 1870s to train the Imperial Army in modern Western warfare." *Id.*; *see also Shame on You Prods. v. Banks*, 120 F. Supp. 3d 1123, 1151 (C.D. Cal. 2015), *aff'd*, 690 F. App'x 519

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

(9th Cir. 2017) (dismissing copyright claim after disregarding similarities flowing from the works' shared premise, such as "[g]etting drunk, spending a 'one-nighter' with someone you just met, waking up disoriented the next morning at the individual's house or apartment, and putting on the clothes worn the night before").

And in *Nobile v. Watts*, 747 F. App'x 879, 881 (2d Cir. 2018), the Second Circuit affirmed dismissal for lack of substantial similarity by holding that "the premise of 'a childless couple providentially finding a motherless baby in a boat washed up on an island and deciding to keep the baby' is an unprotectible 'idea.'" The court added that other similarities, including "finding and illicitly concealing the dead adult accompanying the baby," "deliberating about the moral dimensions of their choice," "and "feeling anxiety that their deception will be revealed or punished," were unprotectable *scenes a faire* that flowed naturally from the unprotectable idea. *Id.*; *see also Sheldon Abend Revocable Tr. v. Spielberg*, 748 F. Supp. 2d 200, 208 (S.D.N.Y. 2010) (no substantial similarity between short story *Rear Window* and movie *Disturbia* where "both works [told] the story of a male protagonist, confined to his home, who spies on neighbors to stave off boredom … discovers that one of his neighbors is a murderer … is himself discovered by the suspected murderer, is attacked by the murderer, and is ultimately vindicated").

In addition, "all facts—scientific, historical, biographical, and news of the day … 'may not be copyrighted and are part of the public domain available to every person.'" *Feist Publ'ns v. Rural Tel. Serv.*, 499 U.S. 340, 348 (1991) (citing *Miller v. Universal City Studios, Inc.*, 650 F.2d 1365, 1369 (2d Cir. 1981)).  Accordingly, courts set aside fact-based elements in analyzing substantial similarity.  *See, e.g.*, *Corbello v. Valli*, 974 F.3d 965, 976 (9th Cir. 2020) (filtering out "unprotectable historical facts" in rejecting author of autobiography's claims against musical *Jersey Boys*), *cert den.*, 141 S. Ct. 2856 (2021); *Abdin v. CBS Broad.*, 971 F.3d 57, 67 (2d Cir. 2020) (setting aside allegations of similar tardigrade characters that shared factual characteristics with actual tardigrade microorganisms, including the

capability to survive in outer space without protection, "eight short legs that run in pairs along a rounded body," and "an O-shaped mouth in the center of the 'face'" as factual and unprotectable, affirming dismissal on substantial similarity grounds).

Courts also routinely filter out generic or common elements before analyzing for substantial similarity.  *See, e.g.*, *Washington v. ViacomCBS*, 2020 WL 5823568, at *2, 4 (C.D. Cal. Aug. 20, 2020) ("[I]nvestigations into the disappearance of a young woman or teenage girl," "that paparazzi would surround and photograph a celebrity," and "that friends or family might take advantage of a famous protagonist" were unprotectable as "common tropes")*; Fillmore v. Blumhouse Prods.*, 2017 WL 4708018, at *3 (C.D. Cal. July 7, 2017) ("[d]ream sequences" and "[b]ringing the dead back to life" are unprotectable concepts).

The district court's decision in *Gilbert v. New Line Productions*, 2010 WL 5790628 (C.D. Cal. Aug. 13, 2010), *aff'd*, 490 F. App'x 34 (9th Cir. 2012), further illustrates these principles.  The court recognized that both works at issue—a screenplay and the box office hit *Monster In Law*—featured mothers that would:

> incessantly call their sons, fake illnesses to draw their sons away, bring back their sons' ex-girlfriends, and hire a private investigator to search into [the current girlfriends'] past.  They also do their sons' laundry and live in the same building as their sons.  Both [girlfriends] seek advice from friends and therapists as they struggle with the mothers in law.  There are also some shared generic themes of family, relationships, and love, as well as a similar narrative pace.

*Id.* at *9.  The court found that most of the works' alleged similarities "flow[ed] from the screenplays' shared generic plot of mothers who scheme to derail their sons' pending marriage to women who the mothers disapprove of," and accordingly, had to be filtered out.  *Id.*

**B.    The Complaint Does Not Sufficiently Allege Substantial Similarity of Protected Expression**

Once unprotectable elements are filtered out, courts must then compare the objective, "specific expressive elements" of the works at issue: "the plot, themes,

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

dialogue, mood, setting, pace, characters, and sequence of events." *Kouf v. Walt Disney Pictures & Television*, 16 F.3d 1042, 1045 (9th Cir. 1994). Though Plaintiff has not provided the Screenplay itself, his complaint must sufficiently plead substantial similarity of the works' specific protectable elements. *Esplanade*, 2017 WL 5635024, at *1, is instructive: rather than attach the work at issue, the plaintiff instead "describe[d] the alleged similarities at such a high level of generality that it [was] impossible for the Court to evaluate whether the alleged copying was sufficiently specific to be protectable or merely a series of unprotectable *scenes a faire*." The court accordingly held that "[t]he allegations thus fail[ed] to state a claim," and dismissed the complaint. *Id.* at *1, 10. *See also Masterson v. Walt Disney Co.*, 2019 WL 1581400, at *7 (C.D. Cal. Jan. 29, 2019) (plaintiff failed to allege substantial similarity where plaintiff neither attached the work at issue nor alleged in the complaint "the plot, themes, dialogue, mood, setting pace, characters, and sequence of events" of her work "in sufficient detail to ascertain whether it is substantially similar" to defendants' work); *Evans v. NBCUniversal Media*, 2021 WL 4513624, at *5 (C.D. Cal. July 23, 2021) (dismissing complaint for "fail[ing] to plead sufficient facts regarding substantial similarity between the works").

Here, rather than include the Screenplay itself or even detailed allegations about its contents, Plaintiff's complaint instead includes only a list of purported scattered similarities between the Screenplay and the Film. *See* Compl. pp. 7-12.[4] Like in *Esplanade*, even fully crediting Plaintiff's list of alleged similarities reveals

_____

[4] Courts analyzing substantial similarity by comparing the actual works at issue repeatedly find that lists, like Plaintiff's, of "random similarities scattered throughout the works" are insufficient to satisfy the extrinsic test because they are "inherently subjective and unreliable." *See Litchfield v. Spielberg*, 736 F.2d 1352, 1356 (9th Cir. 1984). Indeed, courts have readily disposed of copyright claims even where the list of alleged similarities is extensive. *See, e.g., Bernal v. Paradigm Talent & Literary Agency*, 788 F. Supp. 2d 1043, 1061, 1063 (C.D. Cal. 2010) (133-page chart with side-by-side comparisons of the works); *Arica Inst. v. Palmer*, 970 F.2d 1067, 1073 (2d Cir. 1992) (70-page appendix of similarities).

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

unprotectable elements that cannot possibly constitute substantial similarity.  2017 WL 5635024, at *1.

### 1.   Plot and Sequence of Events

The alleged similarities between the works' plots are entirely *scenes a faire* or otherwise unprotectable and generic elements in film and television, many of which are based in reality.

*First*, Plaintiff alleges that in both the Screenplay and the Film, an African American male teenager is unjustly killed by a police officer, who ultimately faces no charges for the shooting.  *See* Compl. p. 7.  There is no question that the concept of a police officer shooting and killing an unarmed man, particularly an African American man, is based in reality, as is the officer facing no criminal repercussion for the killing.  *See, e.g.*, David D. Kirkpatrick et al., *Why Many Police Traffic Stops Turn Deadly*, N.Y. Times (Oct. 31, 2021), https://www.nytimes.com/2021/10/31/us/police-traffic-stops-killings.html (finding that in more than 400 killings of unarmed drivers, charges were brought against only 32 officers, with only five convicted).[5]  This factual premise is unprotectable. *See Corbello*, 974 F.3d at 976.[6]

*Second*, it follows naturally that a man who watched an officer walk away from killing the man's son without facing charges would "feel[] powerless" and set out "on a quest of justice."  Compl. p. 7.  The idea of vigilante justice is generic,

_____

[5] The premise is explored in other expressive works as well.  *See, e.g.*, *The Hate U Give* (2018), Wikipedia, https://w.wiki/4kKh (police officers profile African American teenagers, one of whom attends prep school, during traffic stop and kills unarmed male teenager, thinking he is reaching for a gun; community protests en masse after grand jury does not charge officer).

[6] That both the Film's and the Screenplay's father and son characters are "stopped by two (2) police officers," Compl. p. 11, also is rooted in fact, as it is commonly known that officers often patrol in pairs.  Moreover, countless creative works about police officers illustrate the unprotectable idea of officers patrolling with partners.  *See, e.g.*, *Rush Hour* (1998) https://www.imdb.com/title/tt0120812/; *21 Jump Street* (2021) https://www.imdb.com/title/tt1232829/.

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

found across countless works—for example, the 2009 film *Law Abiding Citizen*, in which "[a] frustrated man decides to take justice into his own hands after a plea bargain sets one of his family's killers free," and the 2009 film *Harry Brown*, in which "[a]n elderly ex-serviceman and widower looks to avenge his best friend's murder by doling out his own form of justice"—not to mention most superhero movies, from *Batman* to *Spider-Man* to *Watchmen*.[7]

*Third*, the works' allegedly shared premise, that a grieving father takes justice into his own hands by publicly taking hostage the officer who killed his son (Compl. p. 7), is an unprotectable "basic plot premise" flowing naturally from the also unprotectable idea of a police officer escaping criminal charges for killing an unarmed man. *See Benay*, 607 F.3d at 625 ("basic plot premise" of "an American war veteran [who] travels to Japan in the 1870s to train the Imperial Army in modern Western warfare" was unprotectable); *Nobile*, 747 F. App'x at 881 ("[T]he premise of 'a childless couple providentially finding a motherless baby in a boat washed up on an island and deciding to keep the baby' is an unprotectible 'idea.'"); *Abend*, 748 F. Supp. 2d at 208 ("broad plot idea, or premise" of "male protagonist, confined to his home, who spies on neighbors to stave off boredom and, in so doing, discovers that one of his neighbors is a murderer" and is then "himself discovered by the suspected murderer, is attacked by the murderer, and is ultimately vindicated" was "not a protectible element").[8]

---

[7] *See Law Abiding Citizen* (2009), https://www.imdb.com/title/tt1197624/; *Harry Brown* (2009), https://www.imdb.com/title/tt1289406/; *Batman Begins* (2005), https://www.imdb.com/title/tt0372784/; *Spider-Man* (2002), https://www.imdb.com/title/tt0145487/; *Watchmen* (2009), https://www.imdb.com/title/tt0409459/.

[8] Plaintiff's complaint is unclear on whether the Screenplay includes an actual "show trial," or if the conflict begins and ends with the hostage standoff and negotiation. *Compare* Compl. ¶ 13 ("Makai takes City Hall hostage in order to put the officer in a show trial aired on social media.") *with id.* p. 7 (characterizing the conflict as a "lengthy hostage negotiation"). Regardless, the concept of an aggrieved party taking a person hostage and even conducting an unsanctioned

Plaintiff's other alleged similarities likewise flow from these unprotectable premises.  That a father taking his son's killer hostage would point a gun to the killer's head flows naturally from the premise of taking a person hostage.  Compl. p. 11.  It follows naturally that the officer's public confession that he profiled the young man he killed would satisfy the father's need for justice—not revenge—such that the father would choose not to kill the officer.  *Id.* at 7.  If revenge were the father's goal, there would be no need to make the hostage negotiation (in the Screenplay) or trial (in the Film) a public affair; instead, the father would simply exact his revenge.  And that a man who has taken hostages, including at least one police officer, would be killed by law enforcement is both rooted in fact and flows naturally from the unprotectable premise.  Finally, it flows naturally that the main character seeking justice would also seek to share the truth with the world, although even Plaintiff's allegations reveal that this element is explored differently in the two works.  In the Screenplay, the main character "us[es] social media and news coverage to spread his message" in some unspecified manner, whereas in the Film, the main character forces a student documentary crew to record the show trial.  *See* Compl. p. 7; Freeman Decl. Ex. 1 at 28:20.

The few plot elements identified in Plaintiff's complaint are all unprotectable and must be filtered out in deciding whether the Plaintiff plausibly alleges the Film and the Screenplay are substantially similar.  Beyond those unprotectable

---

"trial" for the alleged transgression is far from novel.  For example, in the 2012 Batman film *The Dark Knight Rises*, the villain's loyal followers take hostages— including the police commissioner—and, in a "court" sentencing hearing with "no lawyer, no due process," their leader hands down sentences.  *See The Dark Knight Rises* (2012), https://www.imdb.com/title/tt1345836/plotsummary; *see also* https://www.youtube.com/watch?v=i-dJPoSlPfU.  And in a 2011 episode of *General Hospital*, a character takes four people hostage and asserts "charges" against each of them; she threatens to shoot them if they do not cooperate in the "trial."  *See General Hospital* (2011), https://www.imdb.com/title/tt1970768/?ref_=kw_li_tt; https://www.youtube.com/watch?v=beG0JwixUtQ.

Davis Wright Tremaine LLP
865 S. Figueroa St, Suite 2400
Los Angeles, California 90017-2566
(213) 633-6800
Fax: (213) 633-6899

allegations, the complaint fails to describe how the specific expression of the works' plots are similar.  For example, the complaint does not allege how or under what circumstances Makai and Orion are stopped by police in the Screenplay, beyond calling the incident "a late night encounter."  Compl. p. 8.  In addition, the complaint fails to allege *who* Makai takes hostage or *how* he gains control of the hostages.  And to the extent Plaintiff meant to allege both works include a "show trial," there are no allegations explaining how such a "trial" is conducted in the Screenplay (possibly because there is no such "trial").  It is impossible to assess the similarity of the works without basic information about the Screenplay.

**2.    Theme**

"A work's theme is its overarching message," and "there is no protection for stock themes or themes that flow necessarily from a basic premise."  *Silas v. Home Box Office*, 201 F. Supp. 3d 1158, 1180 (C.D. Cal. 2016), *aff'd*, 713 F. App'x 626 (9th Cir. 2018).

Plaintiff alleges that the Film and Screenplay share three themes each of which flows naturally from the works' unprotected premise and is itself unprotectable: (1) "Justice"—that the main character "seeks justice for his son" and "uses media to carry out his message to achieve mission/goal;" (2) "society," because both works "explore[] societal issues like police Profiling, Racial Discrimination & Injustice;" and (3) "Social Media," as the works allegedly "explore[] how Social Media is used to bring attention to racial injustice."  Compl. p. 9.  As described above, these themes are based in reality and flow naturally from the unprotectable premise of an African American father seeking justice after his unarmed son is killed at the hands of police.  *See supra* Section III.B.1.  Plaintiff's identification of these three issues as "Major Theme(s)" of the work only emphasizes the unprotectability of the works' general premise, and how clearly it is rooted in reality.

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Moreover, Plaintiff's assertion that both works explore "social media" is inaccurate.  While Plaintiff alleges that the Screenplay's main character "us[es]" social media in some unspecified way "to spread his message," Compl. pp. 7-8, the Film's main character does not.  Instead, in the Film, the main character takes a student documentary team hostage and forces them to film the character's elaborate show trial for the offending officer.  Freeman Decl. Ex. 1 at 28:20.  There is no discussion of the show trial airing on social media during or after the hostage negotiation; instead, the footage appears to be incorporated into the student director's graduate thesis.  *Id.* at 40:44, 1:24:10.  Beyond these unprotectable ideas and mischaracterizations, the complaint alleges nothing concrete about the Screenplay's possible additional themes.

### 3.    Characters

Plaintiff alleges similarities between four characters across the Film and the Screenplay.  But again, even Plaintiff's handpicked similarities are no more than unprotectable *scenes a faire* and generic elements.

*First*, Plaintiff alleges that each works' main character, Makai Speakes in the Screenplay and Lincoln Jefferson in the Film, is a "doting father who attempts to maintain a relationship with his son after getting a divorce from his wife" and works hard to send his son to a prep school.  Compl. p. 7-8.  A father building a relationship with his son after separating from his son's mother is hardly novel.[9]  Neither is a family working to provide their child with a better education.[10]  "These shared abstract and general character traits do not make the two characters similar for purposes of copyright analysis."  *Whitehead v. Paramount Pictures*, 53 F. Supp.

---

[9] *See, e.g.*, *Mrs. Doubtfire* (1993) https://www.imdb.com/title/tt0107614/; *Kramer v. Kramer* (1979) https://www.imdb.com/title/tt0079417/.

[10] *See, e.g.*, *The Hate U Give* (2018) https://www.imdb.com/title/tt5580266/plotsummary?ref_=tt_stry_pl#synopsis; *Lady Bird* (2017) https://www.imdb.com/title/tt4925292/plotsummary?ref_=tt_stry_pl#synopsis.

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

2d 38, 48 (D.D.C. 1999) (traits including intelligence, paranoia, athleticism, working for the CIA, dating a white woman, and holding a bachelor's degree in political science were "not copyrightable" and did not support substantial similarity), *aff'd*, 2000 WL 33363291 (D.C. Cir. 2000); *see also Tanksley v. Daniels*, 902 F.3d 165, 175, 177 (3d Cir. 2018) (affirming dismissal of copyright action against defendant's television series *Empire* where both works include African American male record executives diagnosed with incurable diseases). Beyond those generic characteristics, even the complaint acknowledges the important differences between Makai and Lincoln.  Makai is a former gang member who served time for his crimes, but has since "turned his life around" and become a limo driver.  Compl. pp. 7-8.  On the other hand, Lincoln served time in the *military*, not jail, and gave up perhaps better opportunities to instead work as a janitor in his son's school in order to better his son's education.  *Id.*; *see also* Freeman Decl. Ex. 1 at 15:23.  Makai is a man who has restarted his life after paying the consequences for bad choices in his past; Lincoln has sacrificed his career to ensure his son's future – a future stolen from them both by Officer Randall.

*Second*, Plaintiff alleges that the works' central teenagers, Orion in the Screenplay and Kajani in the Film, are "stargazing kid[s]" with senses of humor, who attend prep schools with white people, and are killed after attempting to stand up for their rights.  Compl. p. 8.  Again, these are basic unprotectable characteristics that cannot support a finding of substantial similarity.  *See Whitehead*, 53 F. Supp. 2d at 48.  The complaint fails to allege any specific, protectable similarities between Orion and Kajani.

*Third*, the complaint alleges both works feature "[a]n overzealous white cop who shoots and kills an unarmed black teen after racially profiling him and his father during a late night encounter in a residential neighborhood."  Compl. p. 8.  As described above, this is ripped from the headlines and unprotectable.  *See supra*

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Section III.B.1.  Next, the complaint alleges that the officers in both works are married, either with a son (the Film) or with a son on the way (the Screenplay). Compl. p. 8.  This similarity is at best the same type of "general character trait" that is unprotectable under copyright law.  *See Whitehead*, 53 F. Supp. 2d at 48.  Finally, the complaint alleges that each officer "admits guilt" in fear of being killed (Compl. p. 8), but this flows naturally from the unprotectable shared premise of an officer finally being held accountable for shooting an unarmed teen.  Moreover, the complaint acknowledges this "admission" happens in different ways in the Film and the Screenplay.  In the Screenplay, the officer allegedly admits his guilt during a hostage negotiation, only *after* Makai offers to free him.  *See* Compl. ¶ 14 & pp. 7-8.  In the Film, the officer finally admits his he racially profiled Lincoln and Kajani during a fully staged trial, complete with a jury of civilians, inmates, and administrative police officers.  Freeman Decl. Ex. 1 at 1:02:25.  The admission comes without any promise of freedom.

*Fourth*, the complaint compares more seasoned police officers in each of the works: Lieutenant Ezekiel Meadows in the Screenplay and Captain Eugene Morris in the Film.  Compl. p. 8.  The complaint alleges that the officers are African American men torn between their role in the Black community and as a member of law enforcement, who attempt to maintain peace and order and encourage the main character to rethink his drastic actions.  *Id.*  These allegations are generic, based in reality, and flow naturally from the premise of the works.  *See supra* Section III.B.1.[11]  Beyond these unprotectable characteristics, we know nothing meaningful about Lieutenant Meadows or his role in the Screenplay.

---

[11] Moreover, the internal conflict of an African American police captain is a theme explored in numerous creative works, including, for example, the long-running television series *Brooklyn Nine-Nine*.  *See Brooklyn Nine-Nine* (2013-2021) https://www.imdb.com/title/tt2467372/.

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

The complaint does not describe the Screenplay's other characters (if any), or whether they are similar to the Film's many other important characters (for example, the student documentarians, Kajani's mother, and Lincoln's military friends who help him conduct the trial in the police precinct).  On the whole, the few allegations regarding the works' characters are based overwhelmingly on unprotectable traits and characteristics, and do not support an adequately pleaded claim of substantial similarity.

### 4.   Setting

To start, the complaint makes clear that the works take place in quite different cities—the Screenplay in Houston, Texas, and the Film in Los Angeles, California. Compl. p. 7.

Plaintiff alleges that the works' settings are similar because both works take place "during a very tense time between the black community and the local police," and have scenes on city streets "on the July 4th weekend" and in City Halls.  Compl. pp. 7, 9-10.  *First,* each of these settings flows naturally from the premise of a grieving father seeking justice against an uncharged officer who killed his unarmed son.  *See, e.g., Benay*, 607 F.3d at 627-628 (finding that given the works' shared unprotectable premise, it was "not surprising" that the works shared settings like "a scene of the protagonist sailing into Japan, scenes in the Imperial Palace, scenes on the Imperial Army's training grounds, and battle scenes in various places in Japan").  That the works take place "during a very tense time" between the African American community and local police is ripped straight from the headlines.  *See supra* Section III.B.1.  And of course there will be scenes on city streets and in some sort of government building.  Moreover, that such an unjust shooting happened close to the July 4th holiday, a day on which the United States celebrates its independence, emphasizes the reality that "liberty and justice for all" is not enjoyed by everybody equally.  *Second*, the characterization that both works take place in "City Halls" is inaccurate. The Screenplay is set in part in Houston's City

Hall (and apparently involves the city's mayor and his security detail) (Compl. p. 12), but the Film takes place partially in the Los Angeles police precinct, *not* City Hall (Freeman Decl. Ex. 1 at 30:21).

Again, the complaint is silent as to any other settings in the Screenplay and how they are similar or different to the Film's other settings, including Lincoln's home, other family members' homes, the high school Kajani attended, and the police captain's house (the pivotal location where Lincoln takes his first hostage and forces the student documentarians to become unwilling accomplices).  *See* Freeman Decl. Ex. 1 at 29:02.  As pleaded, Plaintiff's allegations fall short of plausibly alleging substantial similarity between the works' settings.

**5.    Dialogue**

"[F]or a plaintiff to demonstrate substantial similarity of dialogue, it must show 'extended similarity of dialogue.'"  *Silas*, 201 F. Supp. 3d at 1181 (quoting *Olson v. Nat'l Broad. Co.*, 855 F.2d 1446, 1450 (9th Cir. 1988)).  *See Gallagher v. Lions Gate Entm't*, 2015 WL 12481504, at *10 (C.D. Cal. Sept. 11, 2015) (three instances of similar dialogue could not demonstrate "extended similarity").

The complaint alleges a scattershot of lines Plaintiff purports overlaps between the works.  *See* Compl. pp. 10-12.  That works sharing an unprotected premise would have similar dialogue at times is unsurprising and unprotectable.  Moreover, Plaintiff's cherrypicked allegations of the *most similar lines* between the works show the lines are not actually as similar as Plaintiff suggests.  It is only natural that a father trying to protect his son during an encounter with law enforcement would speak gently to the teen (in the Screenplay, "It's fine Rion, stay calm," and in the Film, "It's okay, it's alright").  *Id.* p. 11.  Neither can Plaintiff own the notion that an officer seconds away from killing an unarmed teen would draw his gun and use the word "fucking."  Compl. p. 11.  Moreover, Plaintiff's own dialogue excerpts shows how this scene plays differently in each work: in the Screenplay, the officer orders the teen to "get on the fucking ground," whereas in

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

the Film, the officer screams for the teen to "put the fucking phone away." *Id.* And that the father would later anguish that he "couldn't do anything to save [his] son" (the Screenplay) or "couldn't save him" (the Film) likewise flows naturally from the unprotected premise of a father watching an officer kill his unarmed son. *Id.* at 10.

That a father seeking justice for his murdered son would say, "I'm here to get justice" (the Screenplay) or "I just want justice" (the Film), is not protectable. Compl. p. 10. That he would grieve the officer's lack of charges—again, based in reality—by lamenting that the officer is "free to continue his life as usual" (the Screenplay) or able to "go right back to work" (the Film), is similarly unprotectable. *Id.* Neither is the father's proclamation that he wants "[t]he world [to] bear witness" (the Screenplay) or "to make the world see" (the Film) his quest for justice. *Id.* at 11.

The *scenes a faire* continue throughout Plaintiff's additional allegations. That an officer forced to reckon with killing an unarmed teen would say he was "panicked" (the Screenplay) or "scared" (the Film), that he only had "seconds to decide" how to react to the situation, and that he wished the teen "had just complied"—itself a trope in both fictional and real stories about law enforcement— is not protectable. Compl. pp. 10-11. And that an officer handling a hostage situation would say to the assailant, "I'm not the enemy," and would instruct others to either "do what [the assailant] says" (in the Screenplay) or to "stand down" (in the Film) is neither novel nor protectable. *Id.*

Plaintiff's other selections only provide further support that the works stem from unprotectable themes, including racism and its intersection with law enforcement. *See* Compl. p. 12. These discussions are unprotectable, and moreover, the complaint shows that the specific expression is different.

While Plaintiff has cherrypicked a number of dialogue he purports overlaps between the works, his allegations fall short of alleging substantial similarity of dialogue between the works.

DEFENDANTS' MOTION TO DISMISS COMPLAINT
4860-0766-6186v.2 0118814-000002

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

### 6.    Mood and Pace

Though works at issues' moods and paces often are considered by courts assessing substantial similarity, *see Kouf*, 16 F.3d at 1045, Plaintiff makes no allegations regarding these elements.

## IV.    PLAINTIFF'S SECOND CAUSE OF ACTION LIKEWISE FAILS

Because Plaintiff fails to adequately allege that the Film infringes the Screenplay, Plaintiff's second cause of action over defendant Vertical Entertainment, LLC's distribution of the Film likewise fails.  *See Fox Broad. Co. v. Dish Network*, 747 F.3d 1060, 1068 (9th Cir. 2014) ("Secondary liability for copyright infringement does not exist in the absence of direct infringement by a third party.").

## V.    CONCLUSION

As plaintiffs control their complaints, "plaintiffs should allege the facts that best support their case." *Esplanade*, 2017 WL 5635024, at *10.  Plaintiff neither attaches the alleged Screenplay to the complaint nor pleads substantially similar protected expression between the Screenplay and Film.  Accordingly, Defendants respectfully request that the Court dismiss the complaint in its entirety.

DATED: January 28, 2022              Respectfully submitted,

DAVIS WRIGHT TREMAINE LLP
NICOLAS A. JAMPOL
CYDNEY SWOFFORD FREEMAN
SAMANTHA W. LACHMAN

By:    /s/ Nicolas A. Jampol
              Nicolas A. Jampol

Attorneys for Defendants

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899